UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW
YORK

_____

RONALD DAVIDSON,

                                                    Plaintiff,

-- against --

NYC Health and Hospitals Corporation,

                                                    Defendant.

_____


## **Introduction**

¶1. This action seeks declaratory relief which causes verifiable change in
New York City Health and Hospitals Corporation (HHC) policy and practices in
order to comply with the mandate of "safeguards" in Section 2703 of the
Affordable Care Act of 2010 (ACA), codified at 42 USC 1396a(a)(19).

¶2. For the Plaintiff and other persons with disabilities, an essential implied
ACA safeguard is demonstrable HHC compliance with Title II of the
Americans with Disabilities Act of 1990 (ADA), 42 USC § 12131, *et seq*. and
Section 504 of the Rehabilitation Act of 1973 (Sec. 504), 29 USC § 794, *et
seq*.

¶3.  This action seeks to remedy policy and practices of HHC which today
violate the ADA and Sec. 504.

¶4.  This action seeks to remedy discriminatory practices which violate the pendant New York State Human Rights Law (NYS HRL), NY Exec. Law § 296, *et seq*. and New York City Human Rights Law (NYC HRL), N.Y.C. Admin. Code §8-101, *et seq*

¶5. This action seeks to remedy HHC's failure to comply with seven New York State Freedom of Information Law (FOIL) requests which focus on persisting gaps in mandated conformity with federal laws – noncompliance with the ACA, the ADA and Section 504; and this stonewalling is today inconsistent with the intent of pendant New York State Public Officers Law, Article 6.

¶6.  The discriminatory patterns and practices of HHC have been on-going for many years; and absent timely action by this Court, the discriminatory effects of HHC actions are likely to continue unabated.


**<u>Jurisdiction</u>**

¶7. This Court has jurisdiction to resolve issues having to do with Sec. 1902 of the Social Security Act of 1935; and this is because of 42 USC §1983.

¶8.  This Court's jurisdiction to provide preventive relief, including an injunction or other order is confirmed by 28 CFR §35.172(d) which incorporates the intent of 42 USC §12133 and 29 USC §794(a)(2).

¶9. This Court has jurisdiction to issue declaratory judgment pursuant to 28 USC. §§2201 and 2202.

**Venue**

¶10. Venue is proper in this Court, pursuant to 28 USC §1391(b), because both the Plaintiff and the Defendant public hospital are located within this District; and all of the actions and omissions giving rise to the claims in this Complaint have occurred in this District.

**Parties**

¶11. Plaintiff is an enrollee in HHC Health Home (HH), which was established in 2012 by New York State's Department of Health (DOH) pursuant the ACA; and Petitioner is also an enrollee in the Care Management Agency (CMA) program of the Care Coordination Team at HHC's Metropolitan Hospital.

¶12. Plaintiff is a qualified person with disabilities as defined by the ADA; and also a qualified person with handicaps as defined by Section 504; and also Plaintiff is disabled as defined by the pendant NYS HRL and NYC HRL.

¶13. Defendant is a public hospital in New York City; and since 2002, HHC's Bellevue Hospital medical records have identified the Defendant as a qualified person with disabilities.

**Facts Common to All Allegations**

¶14. As a public entity, Defendant HHC has affirmative prophylactic duties to persons with disabilities, including the Plaintiff.

¶15. In 2002-2021, HHC actions did demonstrate an effective policy, pattern and practice of unlawful discriminatory noncompliance with mandated affirmative prophylactic duties to all persons with disabilities, including the Plaintiff.

¶16. As a public entity, Defendant HHC has mandated responsive duties to all persons with disabilities, including the Plaintiff.

¶17. In 2021, HHC actions did demonstrate an effective policy, pattern and practice of unlawful discriminatory noncompliance with mandated affirmative and responsive duties to the Plaintiff.

¶18. As an ambulatory care health center in a public hospital, the Bellevue Neurology Clinic has an on-going, mandated, affirmative prophylactic duty to all persons with disabilities, including the Plaintiff.

¶19. In 2021, the Bellevue Neurology Clinic did affirmatively establish administrative and procedural barriers which targeted specific disabilities caused by Plaintiff's Traumatic Brain Injury (TBI); and timely, meaningful access to Neurology Clinic services, programs and activities was then blocked on the basis of targeted disabilities.

¶20. In 2021, the Bellevue Neurology Clinic did demonstrate a policy, pattern and practice of unlawful discriminatory noncompliance with its mandated responsive duties to qualified individuals with disabilities, including the Plaintiff – failing to act to mitigate discrimination on the basis of disability in its services, programs, and activities.

¶21. Bellevue's Patient Advocacy office and Assistant Director Owen Williams did fail in mandated affirmative prophylactic duties and in responsive duties to qualified individuals with disabilities, including the Plaintiff – failing to act to mitigate discrimination on the basis of disability in HHC services, programs, and activities.

¶22. HHC's General Counsel Andrea Cohen did fail in her mandated affirmative prophylactic duties and in responsive duties to qualified individuals with disabilities, including the Plaintiff – failing to act to mitigate discrimination on the basis of disability in HHC services, programs, and activities.

¶23. HHC's Deputy Records Access Officer Carmen Genao did fail in her mandated affirmative prophylactic duties and in responsive duties to a self-identified person with disabilities, including the Plaintiff – failing to act in a timely manner to respond to FOIL requests about discrimination on the basis of disability in HHC services, programs, and activities.

**Experience of Plaintiff**

¶24. In January 2002, Plaintiff was an in-patient at HHC's Bellevue Hospital after being found unconscious on a sidewalk.

¶25. In January 2002, Plaintiff tried and failed to locate the HHC ADA Coordinator and the HHC Section 504 Coordinator.

¶26. In 2004-2006, Plaintiff was a patient in the Ambulatory Care clinics at Bellevue Hospital.

¶27. In 2004, 2005, 2006, 2007, 2010, 2017, 2018 and 2019, Plaintiff tried and failed to locate the HHC ADA Coordinator.

¶28. In June 2021, Dr. Mark Sethna referred Plaintiff to the Bellevue Hospital Neurology Clinic for follow-up of symptoms following a 1979 TBI – increased frequency and intensity of headaches, increased volume of tinnitus, slowness and fuzziness in cognitive functioning and other neurological complications which worsened during the months of pandemic quarantine.

¶29. In July, a message on the Plaintiff's cell phone voicemail confirmed an unanswered phone call about setting up a Neurology Clinic appointment; but even after more than ten attempts across the span of several days to call back the reply number, no one answered.

¶30. In July, Plaintiff went to the Neurology Clinic; and the front desk clerk explained (a) the telephone call came from an inaccessible, off-site HHC contractor; and (b) there were many complaints about the contractor from people who failed repeatedly when they tried to call back; and (c ) the

contractor's system created serial failures which delayed the possibility of an initial appointment; and (d) there was nothing anyone could do about any of it; and (e) there was no one I could talk to about how this administrative set-up had become a discriminatory barrier.

¶31. Plaintiff tried to explain that the increased volume of tinnitus affected his ability to hear the ringing of his phone, and that the system described by the Neurology Clinic clerk had targeted this specific disability; but any and all words were unavailing.

¶32. In July 2021, Plaintiff tried and failed to locate the HHC ADA Coordinator.

¶33. In August 2021, Plaintiff tried and failed to locate the HHC ADA Coordinator.

¶34. In September 2021, Plaintiff used part of his Bellevue Neurology Clinic appointment with Dr. Janice Chou to complain about the specifically targeted discriminatory barrier created by the Neurology Clinic's scheduling system; and Dr. Chou reported that there was nothing she could do.

¶35. In September 2021, Plaintiff tried and failed to locate the HHC ADA Coordinator.

¶36. In October 2021, Plaintiff tried and failed to locate the HHC ADA Coordinator.

¶37. On November 8, Plaintiff sent an unavailing e-mail to HHC General Counsel Andrea Cohen, asking for help contacting the HHC ADA Coordinator

and citing a credible source which confirmed the reasonableness of this inquiry:

> The ADA requires HHC to designate at least one employee to coordinate its efforts to comply with and fulfill its responsibilities under Title II. -- see "II-8.5000 Designation of responsible employee and development of grievance procedures,"  ADA Title II Technical Assistance Manual." https://www.ada.gov/taman2.html#II-8.5000

¶38. Defendant HHC and General Counsel Cohen were each and both stonewalling when this reasonable outreach was ignored, marginalized, rebuffed.

¶39. On November 17, 2021, Plaintiff went to an appointment in the Neurology Clinic; and after waiting in a long line, he was told that the appointment was rescheduled for mid-January 2022.  Plaintiff demurred loudly because the medical purposes of the visit were urgent; and then Dr. Chou came out into the crowded waiting area to confirm that there was nothing she or anyone else could do.

¶40. On November 17, 2021, Plaintiff tried and failed to locate the HHC ADA Coordinator.

¶41. On November 17, 2021, Plaintiff tried and failed to ask for help at Bellevue's Patient Advocacy office.  Plaintiff demurred when he was handed a yellow post-in note on which was written a phone number for the US Department of Justice..

¶42. Defendant HHC and Assistant Director Owen Williams in the Patient Advocacy office were each and both stonewalling when he said:

(a) neither he nor anyone else in the office had ever heard of an ADA Coordinator or anything about an HHC employee designated to coordinate compliance with the ADA or Sec. 504; and

(b) there was nothing he nor anyone else in his office could do except to "call downtown"; and

(c) there would be "follow-up" when "somebody gets back to me."

¶43. On November 17, Plaintiff sent an e-mail to Williams confirming what had happened in the Patient Advocacy office, repeating the key issue, and clarifying it with a citation and a hyperlink:

You will recall that my language was very specific.  More than once I said, "A public entity that has 50 or more employees is required to have a specific person who functions as an ADA coordinator."

II-8.5000 Designation of responsible employee and development of grievance procedures. A public entity that employs 50 or more persons shall designate at least one employee to coordinate its efforts to comply with and fulfill its responsibilities under title II, including the investigation of complaints. A public entity shall make available the name,

office address, and telephone number of any designated employee.

In addition, the public entity must adopt and publish grievance procedures providing for prompt and equitable resolution of complaints alleging any action that would be prohibited by title II. -- see *ADA Title II Technical Assistance Manual* https://www.ada.gov/taman2.html#II-8.5000

¶44. On November 24, Plaintiff submitted seven e-mailed FOIL requests to HHC:

Group A

• HHC FOIL request re ACA & ADA safeguards re Section 2703 of the Affordable Care Act of 2010 (ACA) and the Americans with Disabilities Act of 1990 (ADA)

• HHC FOIL request re 28 CFR §35.106 re timely and continuing notice about the ADA

• HHC FOIL request re 28 CFR §35.107 re (a) an accessible, responsible employee to coordinate timely ADA compliance, and (b) a timely grievance process to resolve ADA-related problems

<u>Group B</u>

• HHC FOIL request re 28 CFR §35.105 & 45 CFR §84.6(c) re an HHC

self-examination reports mandated by the ADA and Section 504 of the

Rehabilitation Act of 1973 (Sec. 504)

<u>Group C</u>

• HHC FOIL request re 45 CFR §84.8 re timely and continuing notice

about the Sec. 504

• HHC FOIL request re 45 CFR §84.7 re (a) an accessible, responsible

employee to coordinate timely compliance with Sec. 504, and (b) a

timely grievance process to resolve Sec. 504-related problems

• HHC FOIL request re 45 CFR §84.6(a) re remedial action

¶45. On November 29, HHC's Deputy Records Access Officer Carmen Genao

sent Plaintiff serial e-mails acknowledging receipt of each of the FOIL

requests; and she explained that the response time would be 20 business

days.

¶46. On November 29, Plaintiff sent an e-mail to Genao in which he

self-identified as a qualified person with disabilities; and then he attempted

to formally initiate an interactive process of reasonable accommodation,

citing an explicit source which confirmed the underlying law which informed

this timely request:

(7)(i)  A public entity shall make reasonable modifications in

policies, practices, or procedures when the modifications are

necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity ....

(8) A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered. -- see Title 28, Part 35, 28 CFR §35.130(b)(7)(i) and 28 CFR §35.130(b)(8)

https://www.ecfr.gov/current/title-28/chapter-I/part-35

¶47. On December 20, Plaintiff sent an e-mail to Genao asking to begin the process of examining any documents which were then available, even if all the requested paperwork was not yet available for review.

¶48. Defendant HHC and Deputy Records Access Officer Genao were each and both stonewalling when she failed to respond to (a) the written initiation of a process of reasonable accommodation; and (b) the status inquiry about the FOIL requests submitted one month earlier .

¶49. Defendant HHC and Deputy Records Access Officer Genao are each and both stonewalling as she continues to fail to respond to FOIL requests which were acknowledged as received by HHC in November 2021.

**1st Cause of Action re ACA safeguards**

¶50. Plaintiff realleges and incorporates herein all previously alleged paragraphs of this Complaint.

¶51. In 2021, Defendant did fail in its affirmative prophylactic duty to provide timely and continuing ACA safeguards in the best interests of a qualified person with disabilities or handicaps, as codified at USC §1396a(a)(19).

¶52. In 2012-2021, Defendant did engage in a pattern and practice of unlawful discrimination – failing in two distinct ways:

    (a) HHC affirmatively refused to provide timely and continuing notice about the ACA, including the duty of care mandated by 42 USC §1396a(a)(19); and

    (b) HHC responsively refused to acknowledge HHC's ACA duties pursuant 42 USC §1396a(a)(19) when Plaintiff asked about it explicitly.

¶53. In 2021, Defendant did fail in its duty to respond to Plaintiff's FOIL request for access to the documentary record of an HHC plan and protocols for appropriate and consistent compliance with 42 USC §1396a(a)(19).

¶54. In 2021, Defendant did fail in its duty to comply with Plaintiff's FOIL request for access to the documentary record of the development and current status of ACA-mandated "safeguards" -- especially the explicit

language about compliance with 42 USC. §1396a(a)(19) -- which was presumably drafted by HHC to protect Plaintiff's "best interests" as an Health Home (HH) enrollee and a Care Management Agency (CMA) enrollee with disabilities.

**2nd Cause of Action re ADA Notice**

¶55. Plaintiff realleges and incorporates herein all previously alleged paragraphs of this Complaint.

¶56. In 2021, Defendant did fail in its affirmative prophylactic duty to provide timely and continuing notice about the ADA, as mandated by 28 CFR §35.106.

¶57. In 2002-2021, Defendant did engage in a pattern and practice of unlawful discrimination – failing in two distinct ways:

　　(a) HHC affirmatively refused  to provide timely and continuing notice about the ADA, and

　　(b) HHC responsively refused to acknowledge HHC's ADA duties pursuant 28 CFR §35.106 when Plaintiff asked about it explicitly.

¶58. In 2021, Defendant did fail in its duty to respond to Plaintiff's FOIL request for access to the documentary record of an HHC plan and protocols for appropriate and consistent compliance with 28 CFR §35.106.

¶59. In 2021, Defendant did fail in its duty to comply with Plaintiff's FOIL request for access to the documentary record of the development and

current status of ACA-mandated "safeguards" -- especially the explicit
language about compliance with 28 CFR §35.106 -- which was presumably
drafted by HHC to protect Plaintiff's "best interests" as an HH enrollee and a
CMA enrollee with disabilities.


### 3rd Cause of Action re ADA Coordinator

¶60. Plaintiff realleges and incorporates herein all previously alleged
paragraphs of this Complaint.

¶61. In 2021, Defendant did fail in its affirmative prophylactic duty to
identify an accessible, responsible employee to coordinate timely ADA
compliance, as mandated by 28 CFR §35.107(a).

¶62. In 2002-2021, Defendant did engage in a pattern and practice of
unlawful discrimination – failing in two distinct ways:

> (a) HHC affirmatively refused to identify an accessible, responsible
> employee charged with coordinating timely ADA compliance, and

> (b) HHC responsively refused to acknowledge HHC's ADA duties
> pursuant 28 CFR §35.107(a) when Plaintiff asked about it explicitly.

¶63. In 2021, Defendant did fail in its duty to respond to Plaintiff's FOIL
request for access to the documentary record of an HHC plan and protocols
for appropriate and consistent compliance with 28 CFR §35.107(a).

¶64. In 2021, Defendant did fail in its duty to comply with Plaintiff's FOIL
request for access to the documentary record of the development and

current status of ACA-mandated "safeguards" -- especially the explicit language about compliance with 28 CFR §35.107(a) -- which was presumably drafted by HHC to protect Plaintiff's "best interests" as an HH enrollee and a CMA enrollee with disabilities.

## 4th Cause of Action re ADA Grievance Process

¶65. Plaintiff realleges and incorporates herein all previously alleged paragraphs of the Complaint.

¶66. In 2021, Defendant did fail in its affirmative prophylactic duty to identify a timely grievance process to resolve ADA-related problems, as mandated by 28 CFR §35.107(b).

¶67. In 2002-2021, Defendant did engage in a pattern and practice of unlawful discrimination – failing in two distinct ways:

   (a) HHC affirmatively refused to identify a timely grievance process to resolve ADA-related problems,

   (b) HHC responsively refused to acknowledge HHC's ADA duties pursuant 28 CFR §35.107(b) when Plaintiff asked about it explicitly.

¶68. In 2021, Defendant did fail in its duty to respond to Plaintiff's FOIL request for access to the documentary record of an HHC plan and protocols for appropriate and consistent compliance with 28 CFR §35.107(b).

¶69. In 2021, Defendant did fail in its duty to comply with Plaintiff's FOIL request for access to the documentary record of the development and

current status of ACA-mandated "safeguards" -- especially the explicit language about compliance with 28 CFR §35.107(b) -- which was presumably drafted by HHC to protect Plaintiff's "best interests" as a HH enrollee and a CMA enrollee with disabilities.

## 5th Cause of Action re ADA & Section 504 Self-examinations

¶70. Plaintiff realleges and incorporates herein all previously alleged paragraphs of this Complaint.

¶71. In 2021, Defendant did fail in its affirmative prophylactic duty to provide timely and continuing ACA safeguards in the best interests of the Plaintiff, as mandated by 42 USC §1396a(a)(19), which encompasses an implied context-defining history of presumed non-compliance with 28 CFR §35.105 since the 1990s and 45 CFR §84.6(c) since the 1970s.

¶72. In 2012-2021, Defendant did engage in a pattern and practice of unlawful discrimination – failing in four distinct ways:

    (a) HHC affirmatively refused  to provide timely and continuing notice about the ACA, including the duty of care mandated by 42 USC §1396a(a)(19); and

    (b) HHC responsively refused to acknowledge HHC's ACA duty of care pursuant 42 USC §1396a(a)(19) when Plaintiff asked about it explicitly.

(c) HHC responsively refused to respond to compare-and-contrast, context-defining inquiries about HHC compliance with 28 CFR §35.105; and

(d) HHC responsively refused to respond to compare-and-contrast, context-defining inquiries about HHC compliance with 45 CFR §84.6(c).

¶73. In 2021, Defendant did fail in its duty to respond to Plaintiff's FOIL request for access to the documentary record of an HHC plan and protocols for appropriate and consistent compliance with 42 USC §1396a(a)(19), including the provision of timely compare-and-contrast, context-defining information about HHC compliance or non-compliance with 28 CFR §35.105 since the 1990s and 45 CFR §84.6(c) since the 1970s.

¶74. In 2021, Defendant did fail in its duty to comply with Plaintiff's FOIL request for access to the documentary record of the development and current status of ACA-mandated "safeguards" -- especially the explicit language about compliance with 42 USC. §1396a(a)(19), including context-defining compliance with 28 CFR §35.105 and 45 CFR §84.6(c) -- which was presumably drafted by HHC to protect Plaintiff's "best interests" as an HH enrollee and a CMA enrollee with disabilities.

## 6th Cause of Action re Section 504 Notice

¶75. Plaintiff realleges and incorporates herein all previously alleged paragraphs of this Complaint.

¶76. In 2021, Defendant did fail in its affirmative prophylactic duty to provide timely and continuing notice about Sec. 504, as mandated by 45 CFR §84.8.

¶77. In 2004-2021, Defendant did engage in a pattern and practice of unlawful discrimination – failing in two distinct ways:

   (a) HHC affirmatively refused to provide timely and continuing notice about Sec. 504, and

   (b) HHC responsively refused to acknowledge HHC's Sec. 504 duties pursuant 45 CFR §84.8 when Plaintiff asked about it explicitly.

¶78. In 2021, Defendant did fail in its duty to respond to Plaintiff's FOIL request for access to the documentary record of an HHC plan and protocols for appropriate and consistent compliance with 45 CFR §84.8.

¶79. In 2021, Defendant did fail in its duty to comply with Plaintiff's FOIL request for access to the documentary record of the development and current status of ACA-mandated "safeguards" -- especially the explicit language about compliance with 45 CFR §84.8 -- which was presumably drafted by HHC to protect Plaintiff's "best interests" as an HH enrollee and a CMA enrollee  with disabilities.


**7th Cause of Action re Section 504 Coordinator**

¶80. Plaintiff realleges and incorporates herein all previously alleged paragraphs of this Complaint.

¶81. In 2021, Defendant did fail in its affirmative prophylactic duty to identify an accessible, responsible employee to coordinate timely Sec. 504 compliance, as mandated by 45 CFR §84.7(a).

¶82. In 2004-2021, Defendant did engage in a pattern and practice of unlawful discrimination – failing in two distinct ways:

> (a) HHC affirmatively refused to identify an accessible, responsible employee charged with coordinating timely Sec. 504 compliance, and

> (b) HHC responsively refused to acknowledge HHC's ADA duties pursuant 45 CFR §84.7(a) when Plaintiff asked about it explicitly.

¶83. In 2021, Defendant did fail in its duty to respond to Plaintiff's FOIL request for access to the documentary record of an HHC plan and protocols for appropriate and consistent compliance with 45 CFR §84.7(a).

¶84. In 2021, Defendant did fail in its duty to comply with Plaintiff's FOIL request for access to the documentary record of the development and current status of ACA-mandated "safeguards" -- especially the explicit language about compliance with 45 CFR §84.7(a) -- which was presumably drafted by HHC to protect Plaintiff's "best interests" as an HH enrollee and a CMA enrollee with disabilities.


**8th Cause of Action re Section 504 Grievance Process**

¶85. Plaintiff realleges and incorporates herein all previously alleged paragraphs of the Complaint.

¶86. In 2021, Defendant did fail in its affirmative prophylactic duty to identify a timely grievance process to resolve Sec. 504-related problems, as mandated by 45 CFR §84.7(b).

¶87. In 2004-2021, Defendant did engage in a pattern and practice of unlawful discrimination – failing in two distinct ways:

(a) HHC affirmatively refused to identify a timely grievance process to resolve Sec. 504-related problems,

(b) HHC responsively refused to acknowledge HHC's Sec. 504 duties pursuant 45 CFR §84.7(b) when Plaintiff asked about it explicitly.

¶88. In 2021, defendant HHC did fail in its duty to respond to Plaintiff's FOIL request for access to the documentary record of an HHC plan and protocols for appropriate and consistent compliance with 45 CFR §84.7(b).

¶89. In 2021, defendant HHC did fail in its duty to comply with Plaintiff's FOIL request for access to the documentary record of the development and current status of ACA-mandated "safeguards" -- especially the explicit language about compliance with 45 CFR §84.7(b) -- which was presumably drafted by HHC to protect Plaintiff's "best interests" as a HH enrollee and a CMA enrollee with disabilities.

**9th Cause of Action re Section 504 Remedial Action**

¶90. Plaintiff realleges and incorporates herein all previously alleged paragraphs of this Complaint.

¶91. In 2021, Defendant did fail in its affirmative prophylactic duty to provide timely and continuing ACA safeguards in the best interests of the Plaintiff, as mandated by 42 USC §1396a(a)(19), which encompasses an implied context-defining history of remedial action in compliance with 45 CFR §84.6(a).

¶92. In 2012-2021, Defendant did engage in a pattern and practice of unlawful discrimination – failing in two distinct ways:

(a) HHC responsively refused to acknowledge HHC's ACA duty of care pursuant 42 USC §1396a(a)(19), which encompasses an implied context-defining history of remedial action in compliance with 45 CFR §84.6(a); and

(b) HHC responsively refused to establish and maintain a process which would have made it possible to ask about the ACA duty of care pursuant 42 USC §1396a(a)(19), which encompasses an implied context-defining history of remedial action in compliance with 45 CFR §84.6(a)

¶93. In 2021, Defendant did fail in its duty to respond to Plaintiff's FOIL request for access to the documentary record of an HHC plan and protocols for appropriate and consistent compliance with 42 USC §1396a(a)(19), including the provision of timely compare-and-contrast, context-defining information about the history of remedial action in compliance with 45 CFR §84.6(a).

¶94. In 2021, Defendant did fail in its duty to comply with Plaintiff's FOIL request for access to the documentary record of the development and current status of ACA-mandated "safeguards" -- especially the explicit language about compliance with 42 USC. §1396a(a)(19), encompassing the context-defining history of remedial action in compliance with 45 CFR §84.6(a) -- which was presumably drafted by HHC to protect Plaintiff's "best interests" as an HH enrollee and a CMA enrollee with disabilities.

## 10th Cause of Action re NYS Human Rights Law

¶95. Plaintiff realleges and incorporates herein all previously alleged paragraphs of this Complaint.

¶96. Plaintiff is a person as defined by NYS HRL, NY Exec. Law § 292(1).

¶97. Plaintiff is a person with disabilities as defined by NYS HRL, NY Exec. Law § 292(21).

¶98. Defendant HHC is a "place of accommodation" as defined by NYS HRL, NY Exec. Law § 292(9).

¶99. Defendant HHC's wrongful actions are made specific in the paragraphs above; and this is unlawful "discrimination" as defined by NYS HRL, NY Exec. Law § 296(2-a).

¶100. Defendant HHC's wrongful actions are made specific in the paragraphs above; and these are unlawful "discriminatory practices" as defined by NYS HRL, NY Exec. Law § 296(2-c).

## 11th Cause of Action re NYC Human Rights Law

¶101. Plaintiff realleges and incorporates herein all previously alleged paragraphs of this Complaint.

¶102. Plaintiff is a "person" as defined by NYC HRL, N.Y.C. Admin. Code §8-102.

¶103. Plaintiff is a "person aggrieved" as defined by NYC HRL, N.Y.C. Admin. Code §8-102.

¶104. Plaintiff is a person with a "disability" as defined by NYC HRL, N.Y.C. Admin. Code §8-102.

¶105. In 2002-2021, Plaintiff was unable to initiate an interactive process of "reasonable accommodation" as defined by NYC HRL, N.Y.C. Admin. Code §8-102.

¶106. Defendant HHC is a "public agency" as defined by NYC HRL, N.Y.C. Admin. Code §8-102.

¶107. Defendant HHC is a "place or provider of public accommodations" as defined by NYC HRL, N.Y.C. Admin. Code §8-102.

¶108. Defendant HHC's wrongful actions are made specific in the paragraphs above; and these are "unlawful discriminatory practices" as defined by NYC HRL, N.Y.C. Admin. Code §8-107.4(a)-(b).

**DECLARATORY RELIEF**

¶109. Plaintiff realleges and incorporates herein all previously alleged paragraphs of this Complaint.

¶110. Plaintiff contends that Defendant has failed and is continuing to fail to comply with laws prohibiting discrimination against persons with disabilities in violation of Section 2703 of the Affordable Care Act of 2010 (ACA), 42 USC 1396a(a)(19); Title II of the Americans with Disabilities Act of 1990 (ADA), 42 USC § 12131, *et seq*.; Section 504 of the Rehabilitation Act of 1973 (Sec. 504), 29 USC § 794, *et seq*.; pendant New York State Human Rights Law (NYS HRL), NY Exec. Law § 296, *et seq*.; and pendant New York City Human Rights Law (NYC HRL), N.Y.C. Admin. Code §8-101, *et seq*

¶111. By its actions, Defendant HHC is shown to disagree with Plaintiffs' contention.

¶112. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows, including but not limited to:

¶113. A declaration that Defendants' conduct as alleged herein has violated and continues to violate Section 2703 of the Affordable Care Act of 2010 (ACA), including 42 USC 1396a(a)(19); Title II of the Americans with Disabilities Act of 1990 (ADA), 42 USC § 12131, *et seq.*; Section 504 of the Rehabilitation Act of 1973 (Sec. 504), 29 USC § 794, *et seq.*; pendant New York State Human Rights Law (NYS HRL), NY Exec. Law § 296, *et seq.*; and pendant New York City Human Rights Law (NYC HRL), N.Y.C. Admin. Code §8-101, *et seq.*; and

¶114. An order requiring timely compliance with Plaintiff's FOIL requests; and

¶115. An order and judgment enjoining Defendant from violating each of the above cited laws, and requiring Defendant public hospital to develop and implement a verifiable plan to remedy such failures in order to provide equal access to its programs and services for all people, including those with disabilities; and

¶116. Plaintiff's reasonable attorneys' fees and costs; and

¶117. Such other and further relief as the Court deems just and proper

Dated: January 27, 2022                    Respectfully submitted,
      New York, New York

                                            /s/ Ronald Davidson

                                            Ronald Davidson
                                            531 Main Street, Apt. 217
                                            New York, New York 10044
                                            347-835-8902