UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RONALD DAVIDSON,

                Plaintiff,

-against-

NYC HEALTH AND HOSPITALS CORPORATION,

                Defendant.

22-cv-764 (AS)

MEMORANDUM OPINION
AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

Pro se plaintiff Ronald Davidson suffers from a head injury that causes symptoms including headaches, tinnitus, and cognitive-functioning issues. Am. Compl. ¶ 33, Dkt. 5. In June 2021, he was referred to Defendant NYC Health and Hospital Corporation's ("H&H") Bellevue Hospital Neurology Clinic for symptoms stemming from his injury. *Id.* The next month, he got a voicemail about scheduling an appointment. ¶ 34. His attempts to return the call were unsuccessful. *Id.* An employee at the hospital later explained to Davidson that the call came from an off-site contractor and acknowledged that H&H had received many complaints from patients who had tried to schedule an appointment with the contractor. ¶ 35. Davidson tried to explain that he could not hear his phone because of his tinnitus and that the scheduling system was therefore discriminatory. ¶ 36. The employee told Davidson that there was no one that a patient with disabilities could speak to about this alleged discrimination. ¶ 35.

Over the next few months, Davidson tried to locate the clinic's ADA coordinator but was unsuccessful. ¶¶ 37–42. In addition, during a September 2021 appointment at the clinic, Davidson explained to his doctor how the clinic's scheduling system was discriminatory. ¶ 38. The doctor said nothing could be done. *Id.*

On November 17, 2021, Davidson had an appointment at the clinic. ¶ 43. After waiting in a long line, he was told that his appointment had been rescheduled for mid-January. *Id.* He complained but was told nothing could be done. *Id.* He was also told that there was no employee at the clinic who was designated to coordinate compliance with the ADA. ¶ 46.

Later that month, Davidson emailed 8 New York Freedom of Information Law ("FOIL") requests to the hospital. ¶ 49. The hospital records officer acknowledged these requests and said that the response would take 20 days. ¶ 50. Davidson replied, identifying himself as disabled and requesting accommodations. ¶ 51. A month later, Davidson followed up, asking to review any documents that had been retrieved so far. ¶ 52. Davidson never got a response. ¶¶ 53–54.

Also in November 2021, Davidson emailed H&H about a Medicaid waiver. ¶ 118. H&H's Director of Quality, Kelly Norcross, responded on November 19, 2021, writing that his request for assistance in navigating the waiver process fell within the scope of a care coordinator. ¶ 119. Davidson says that he and Norcross worked together for about three months on reasonable accommodations. ¶ 120. For example, Norcross "tr[ied] to help him refine or distill words and talking points in preparation for his February 18 Neuropsych Clinic appointment." ¶ 123. But the "reasonable accommodations were suddenly interrupted" on February 10, 2022. ¶ 124. Davidson appears to allege that this was in retaliation for referencing legal action. ¶ 125.

Davidson then brought this lawsuit against H&H, asserting 13 causes of action under state and federal law, as well as federal regulations. ¶¶ 55–139.

H&H now moves to dismiss. But H&H's motion appears to address only a subset of Davidson's claims: his Title II, Rehabilitation Act, and Section 1983 claims as they relate to the allegedly-discriminatory appointment system, as well as his FOIL claims. So Davidson's other claims are not implicated here.

## LEGAL STANDARDS

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). On a motion to dismiss, all factual allegations in the complaint must be accepted as true and all reasonable inferences drawn in the plaintiff's favor. *City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011). When, as here, the plaintiff is pro se, courts "read the pleadings … liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted).

## DISCUSSION

### I. Davidson's ADA, Rehabilitation Act, and state and local human rights law claims survive.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Similarly, the Rehabilitation Act provides that "no otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Although there are "subtle differences" between these acts, courts treat claims under them "identically" unless one of those differences is implicated, which neither party alleges to be the case here. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citation omitted).

So to state a claim under either statute, Davidson must allege that (1) he is a qualified individual with a disability; (2) H&H was subject to the statutes; and (3) Davidson was "denied the opportunity to participate in or benefit from [H&H's] services, programs, or activities, or [was]

2

otherwise discriminated against by [H&H], by reason of [his] disabilities." *Id.* at 272. H&H does not contest that Davidson has a qualified disability or that it is subject to the ADA and Rehabilitation Act. Instead, it argues that Davidson failed to identify a program, service, or activity from which he was excluded. Dkt. 28 at 10. H&H also argues that Davidson does not allege that his difficulties with H&H's appointment system were caused by his disability. *Id.* at 10–11.

But "[p]laintiffs need not … prove that they have been disenfranchised or otherwise completely prevented from enjoying a service, program, or activity to establish discrimination under Section 504 or Title II." *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 198 (2d Cir. 2014) (internal quotation marks and citation omitted). Instead, plaintiffs must show that the public entity "failed to provide them with meaningful access to the benefit that it offers." *Id.* at 199 (cleaned up). And construed liberally, the complaint alleges that H&H did not provide Davidson with meaningful access to healthcare benefits because its appointment system made it difficult for those with hearing issues to make appointments. Am. Compl. ¶¶ 34–38. Because of the system, Davidson had trouble scheduling appointments. ¶¶ 34–36.

And, contrary to H&H's contentions, Davidson's complaint does allege that the difficulties in making an appointment were caused by his disability. Davidson says that "the system used by the Neurology Clinic to schedule appointments targeted a very specific disability." ¶ 36. H&H complains that Davidson has not identified that disability or alleged that he suffered from it and suggests that Davidson's "problem … was caused by his not hearing his own phone ring." Dkt. 28 at 10. But in the same sentence that Davidson alleges that the appointment system targeted a disability, he also explains that "the increased volume of tinnitus affected his ability to hear his phone." ¶ 36. So Davidson has identified the disability and alleged that he suffered from it.

H&H also says that Davidson "fail[ed] to identify … what aspect of the system was allegedly inaccessible." Dkt. 28 at 11. But construed liberally, the complaint alleges that the use of phone calls to schedule appointments, together with the contractor's known failure to answer return calls, fails to provide those with hearing issues meaningful access to H&H's services. ¶¶ 34–35.

Accordingly, Davidson's claims under the ADA and Rehabilitation Act survive. So too do his claims under New York State and City human rights laws. H&H says that those claims fail for the same reasons that Davidson's federal claims do. Dkt. 28 at 9. But if H&H's arguments are insufficient to warrant dismissal of the federal claims, they are likewise insufficient to warrant dismissal of his state and local claims.

Davidson's complaint may be deficient in other respects. But this Court will not go hunting for reasons to dismiss a pro se plaintiff's complaint. Still, to survive summary judgment, Davidson must "suggest the existence of a plausible accommodation, the costs of which, facially do not clearly exceed the benefits." *Henrietta D.*, 331 F.3d at 280. Davidson is advised to be specific about the accommodation he believes he is entitled to.

3

In addition, H&H's motion to dismiss addresses only allegations stemming from issues with H&H's appointment system. The complaint also alleges a second, somewhat distinct set of facts: that Davidson needed help in coordinating his care because of his cognitive-functioning issues, that (after some difficulty) he began working with an H&H care coordinator who was helping him communicate with his doctors, and that after he mentioned potential legal action, H&H "unlawfully retaliated against" him by cutting off those accommodations. Am. Compl. ¶¶ 116, 119–26. Because H&H does not explain why these facts are insufficient to state a claim under the ADA or Rehabilitation Act, Davidson's claims premised on these facts can go forward.

H&H is correct, however, that the failure to respond to Davidson's FOIL requests, standing alone, does not give rise to an ADA or Rehabilitation Act claim. Dkt. 28 at 11–12. Davidson does not allege that the failure to respond to those requests was *because of* his disability, nor is such an implication clear from the face of the complaint (even when construed liberally). Am. Compl. ¶¶ 26, 49–54. As discussed below, there is a different avenue for challenging H&H's failure to respond to FOIL requests. But Davidson can develop these facts in discovery if they fit into his broader allegations that H&H is failing to accommodate his cognitive-functioning issues.

Finally, H&H's motion to dismiss does not address whether Davidson can bring claims directly under various regulations that implement the ADA. It seems unlikely that he can. *See Abrahams v. MTA Long Island Bus*, 644 F.3d 110, 120 n. 7 (2d Cir. 2011); *see also Montalvo v. Lamy*, 139 F. Supp. 3d 597, 610 (W.D.N.Y. 2015) (collecting cases). But because H&H does not address this, those claims survive for now.

## II.   Davidson's Section 1983 claim premised on § 1396a(a)(19) is dismissed.

Davidson also purports to bring claims under Section 1983. To do so, he "must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).

Davidson suggests that H&H violated § 1396a(a)(19). That section requires a state medical assistance plan to "provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients." 42 U.S.C. § 1396a(a)(19). But the Second Circuit has already held that § 1396a(a)(19) is "too vague and amorphous to create a Section 1983 private right of action." *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015). So to the extent that Davidson brings claims under Section 1983 for violations of § 1396a(a)(19), those claims are dismissed.

## III.   Davidson's FOIL claims are dismissed.

FOIL requires the government to "make its records available to the public." *L. Offs. of Cory H. Morris v. Suffolk Cnty.*, 188 N.Y.S.3d 151, 154 (2023) (citation omitted). "The statutory time to respond to a FOIL request for records is 'within five business days of the receipt of a written request, and the agency should respond by making such record available to the person requesting it, denying such request in writing or furnishing a written acknowledgment of the receipt of such

request and a statement of the approximate date when such request will be granted or denied." *Id*. (cleaned up). Davidson alleges that he got a written acknowledgement of his request and was told he would get a response within 20 days. But that response never came.

Still, "an individual seeking to challenge such a denial must follow a specific procedural path." *Simpson v. Town of Southamption*, 2007 WL 1755749, at *3 (E.D.N.Y. June 15, 2007). First, the individual must appeal the denial in writing to the head of the appropriate state entity within 30 days of the denial. *Id.* If unsuccessful, the individual must then institute an Article 78 proceeding in New York state court. *Id.* Davidson failed to follow either step of this process.

It is true that New York courts have held that the first requirement may be excused where an agency fails to inform the individual that further appeal within the agency is available. *L. Offs. of Cory H. Morris*, 188 N.Y.S.3d at 154. But Davidson has not pointed to any case holding that the second requirement may be excused. And many courts in this circuit have refused to consider FOIL denials, holding that the "appropriate vehicle for challenging denials … is a state court proceeding pursuant to N.Y.C.P.L.R. Article 78." *See Schuloff v. Fields*, 950 F.Supp. 66, 67–68 (E.D.N.Y. 1997); *see Jaegly v. Couch*, 168 F. App'x 480, 482 (2d Cir. 2006).

For these reasons, Davidson's FOIL claims are dismissed, without prejudice to Davidson pursuing these claims through a state court Article 78 proceeding.

## CONCLUSION

For the reasons stated, H&H's motion to dismiss is DENIED IN PART and GRANTED IN PART. As discussed at the conference held on November 28, 2023, Davidson has requested and is granted leave to file a second amended complaint including additional allegations of wrongful acts he believes that H&H has engaged in. That amended complaint should be filed on or before January 31, 2024.

The Clerk of Court is directed to terminate Dkt. 27.

SO ORDERED.

Dated: December 4, 2023
  New York, New York

                                          ARUN SUBRAMANIAN
                                          United States District Judge